# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:09cv220

| | |
|---|---|
| BLACK PALM DEVELOPMENT CORPORATION, ) ) ) Appellant, ) ) vs. ) ) DALE BARLAGE, ) ) Appellee. ) ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the appeal from an Order of the United States Bankruptcy Court for the Western District of North Carolina, wherein the Adversary Proceeding of the Plaintiff-Appellant was dismissed. [Doc. 1, AP Doc. 16].[1]

Plaintiff-Appellant Black Palm Development Corporation (Black Palm) and Defendant-Appellee Dale Barlage are unsecured nonpriority creditors in the Chapter 7 bankruptcy proceeding of Leigh Valentine (Debtor). [BC Doc. 1 at 22-23]. Black Palm objected to the claim of Barlage during the pendency

---

[1] Citations to the underlying base case in the Bankruptcy Court, 06-40305 are identified by the prefix BC followed by the docket number of the item therein, e.g. [BC Doc.1]. Citations to the adversary proceeding file below, 09-4004, are identified by the prefix AP followed by the docket number of the item in that file, e.g. [AP Doc. 1]. Citations to the docket of this Court contain no prefix, e.g. [Doc. 1].

of the Valentine bankruptcy. [BC Doc. 123]. Black Palm ultimately withdrew that objection and filed the present adversary proceeding against Barlage. [AP Doc. 1]. The Bankruptcy Court entered an order dismissing the adversary proceeding. [AP Doc. 16]. Black Palm appeals from that order. [Doc. 1; AP Doc. 18].

## STANDARD OF REVIEW

The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where such findings are clearly erroneous. See Educational Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 398 (4th Cir. 2005). The Bankruptcy Court's legal conclusions, however, are subject to a de novo standard of review. See Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004). "Findings of fact are clearly erroneous 'when, although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" McGahren v. First Citizens Bank & Trust Co. (In re Weiss), 111 F.3d 1159, 1166 (4th Cir.) (quoting Green v. Staples (In re Green), 934 F.2d 568, 570 (4th Cir. 1991)), cert. denied, 522 U.S. 950, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety,

2

> the [appellate court] may not reverse it even though
> convinced that had it been sitting as the trier of fact,
> it would have weighed the evidence differently.
> Where there are two permissible views of the
> evidence, the factfinder's choice between them
> cannot be clearly erroneous.

Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Additionally, due regard must be given to the Bankruptcy Court's assessment of the credibility of the witnesses. Educational Credit Mgmt. Corp. v. Gouge, 320 B.R. 582, 583 (W.D.N.C. 2005). Thus, "absent extraordinary circumstances, an appellate court should not disturb a factfinder's credibility determinations." In re Environmental Aspecs, Inc., 235 B.R. 379, 384 (E.D.N.C. 1999).[2]

## FACTUAL BACKGROUND

Barlage obtained a judgment in state court in Arizona against the Debtor in the original amount of $784,000.00 on or about November 24, 2003. The following findings of fact of the Bankruptcy Court regarding that judgment are not in dispute:

> 5. The original judgment obtained by Barlage against Debtor in Arizona was based upon Debtor's default and a validly entered

---

[2] Curiously, Appellant makes a strenuous argument (in bold print with underlining) in its brief to this Court that the appropriate standard is for this Court to review the record below "in the light most favorable to Appellant," as though this were an examination of the allegations in a complaint on a Rule 12(b)(6) motion, and on that basis the judgment of the Bankruptcy Court should be reversed. [Doc. 8 at 17]. Appellant cites no authority for this novel proposition.

default judgment against Debtor in Arizona. Although the original judgment of Barlage against Debtor in Arizona was a default judgment, Debtor made at least three motions to set aside Barlage's judgment in Arizona pursuant to Arizona Rule of Civil Procedure ("ARCP") 60. The ARCP 60 motions by Debtor against Barlage's judgment in Arizona included, but were not limited to, motions as follows:

    a. Alleged inadequate service of process.

    b. Alleged excessive damages because of violation of ARCP 54(d) or alleged excessive damages because of miscalculation/insufficient evidence.

    c. Alleged attorney fee award problem.

6. All of the ARCP 60 motions brought by Debtor against Barlage's judgment in Arizona were eventually resolved in favor of Barlage including, but not limited to, as follows:

    a. The alleged inadequate service of process issue was resolved by the Arizona appellate courts in favor of Barlage and against Debtor.

    b. The excessive damages and attorney fee issues described above were resolved by the Arizona trial court in favor of Barlage and against Debtor. The Debtor appealed those issues and that appeal was pending on her Petition date of June 1, 2006. However, the Trustee chose not to pursue the appeal on behalf of the Debtor's bankruptcy estate, and, the appeal was subsequently dismissed for failure to prosecute.

7. As of Debtor's Petition date, Barlage's judgment against Debtor in Arizona that formed the basis of Barlage Proof of Claim No. 6 was a valid out-of-state final judgment based upon adequate service of process.

. . .

10. On February 20, 2009, Black Palm filed the current adversary proceeding seeking equitable subordination against Barlage Proof of Claim No. 6 alleging in pertinent part as follows:

> a. Alleged inadequate service of process (Adversary Complaint ¶¶ 51-54).
>
> b. Alleged excessive damages because of alleged violation of ARCP 54(d) for award of damages in excess of those claimed in state court Complaint and alleged excessive damages because of miscalculation/insufficient evidence (Adversary Complaint ¶¶ 55-58).
>
> c. Alleged improper award of attorneys' fees because of alleged failure of Barlage's counsel to tell state trial court that contracts upon which state court Complaint was based did not contain attorneys' fees provision (Adversary Complaint ¶ 59).

11. On April 24, 2009, after moving for an extension of time to answer or otherwise respond, Barlage filed a timely motion to dismiss pursuant to Bankruptcy Rule 7012 on multiple grounds including:

> a. Collateral estoppel by the Arizona litigation between Debtor and Barlage.
>
> . . .
>
> c. Black Palm lacked standing to bring the Adversary Complaint for equitable subordination because the proper party plaintiff was the Trustee.
>
> d. Black Palm lacked standing to bring the Adversary Complaint because it violated Maryland corporate statutes and lost its right to sue.
>
> . . .

12. After reviewing the extensive submissions of the parties, the Court decided to dismiss the Adversary Complaint on grounds of

collateral estoppel because:

> a. It appears to the Court that the issues raised by the Adversary Complaint and described above were actually litigated in the Arizona litigation between Barlage and Debtor. Debtor had a full and fair opportunity to litigate the issues in Arizona and was represented by counsel in that litigation. Indeed, a review of the briefs from the Arizona litigation submitted on the issue of collateral estoppel in this litigation show that several of the issues now presented by Black Palm are taken virtually directly from Debtor's briefs in Arizona.
>
> b. The Court finds that the interest of the Debtor in the Arizona litigation is and was aligned with the interest of Black Palm in the current Adversary Complaint litigation. Therefore, the Court determines that the Debtor's identity of interest with Black Palm in the current litigation means that they are in privity with regard to the issues presented by Debtor's ARCP 60 motions that collaterally estop Black Palm's current Adversary Complaint.[3]

13. The Court also finds that there may be other reasons to dismiss plaintiff's Adversary Complaint but does not elaborate on those reasons at this time.

Based upon these findings of fact, the Bankruptcy Court made the following conclusions of law:

1. Plaintiff Black Palm's Adversary Complaint and claim for equitable subordination against Barlage and Barlage's Proof of Claim No. 6 is collaterally estopped by the Arizona state court

---

[3] Black Palm does not dispute that this is an accurate rendition of what took place in the Bankruptcy Court. It does not concede, however, that the legal conclusions therein are correct.

litigation.

2. Barlage is entitled to an Order dismissing plaintiff Black Palm's Adversary Complaint with prejudice.

[AP Doc.16 at 2-4].

It is from that determination that this appeal was taken to this Court.

## DISCUSSION

As a threshold matter, Appellee asserts that Appellant has no standing. In order to bring an action or to prosecute an appeal one must have standing; otherwise the case or appeal must be dismissed. Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 14, 124 S.Ct. 2301, 2310, 159 L.Ed.2d 98, 111 (2004); Sprint Com. Co., L.P. v. APCC Services, Inc., 554 U.S. 269, 289, 128 S.Ct. 2531, 2544, 171 L.Ed.2d 424, 440 (2008). There are two components to federal standing. First, there must be a "case or controversy" between the parties; otherwise there is no constitutional basis under Article III for the Court to take cognizance of the matter. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992). Second, "federal courts have adopted a set of prudential principles that preclude the exercise of jurisdiction over some types of cases in which Article III standing exists." Schwarzer, Federal Civil Procedure Before Trial, ¶2:4108. These "prudential principles" are manifested in the Bankruptcy Code in 11 U.S.C. § 323(a) and (b), which generally grant the Trustee exclusive standing to sue

and be sued as the sole representative of the estate. In re Seven Seas Petroleum, 522 F.3d 575, 584 (5th Cir. 2008); Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002); St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir. 1989); In re Elrod Holdings Corp., 392 B.R. 110, 114 (Bkrtcy.D.Del., 2008). It is for this reason that ordinarily one creditor cannot bring an action against another creditor in a bankruptcy proceeding. The action against the defendant creditor is in the hands of the Trustee.

Black Palm has brought this action against Barlage seeking for the Bankruptcy Court to equitably subordinate Barlage's claim to the other general unsecured claims in Valentine's bankruptcy. Section 510(c) permits the court to subordinate claims under principles of equitable subordination. 11 U.S.C. § 510(c). A Bankruptcy Court may subordinate a claim when claimant has engaged in inequitable conduct, the misconduct results in injury to creditors of the debtor or confers unfair advantage on a claimant, and equitable subordination would not be inconsistent with the bankruptcy laws. Societa Internazionale Turismo v. Lockwood (In re Lockwood), 14 Bankr. 374 (Bankr. E.D.N.Y. 1981), aff'd, No. CV-81-3462 (E.D.N.Y. Mar. 18, 1982). In making the doctrine of equitable subordination part of the Bankruptcy Code by enacting section 510, Congress did not specify which parties would have

8

standing to assert such a claim. As noted above, the Trustee clearly has standing, based on his duties in the marshalling and distribution process. The standing of an individual creditor to assert equitable subordination, however, is dependent upon the nature of his claim. "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir.1989). For instance, a creditor's committee, whose position as representative of all creditors is essentially synonymous with an inability to show particularized injury, has no standing to present a claim for the equitable subordination of one creditor's claim unless granted special permission to do so by the Court. In re Applied Theory Corp., 493 F.3d 82, 58 C.B.C.2d 351 (2d Cir. 2007). See, generally, DeNatale and Abram, *The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors,* 40 Bus. Law. 417 (1984-85).

The concept of "particularized injury" is simply yet broadly explained as harm "which differs from injury incurred by all creditors," and conversely as "a unique claim reflecting particularized harm to the [individual] creditor's separate interest." In re Elrod Holdings Corp., 392 B.R. 110, 115, (Bkrtcy. D.Del. 2008). Even where a Trustee brings an action against a creditor based

9

on equitable subordination, some other individual creditor may have an interest uniquely affected by that alleged inequitable conduct, "separate and apart from the interests of the estate as a whole," and therefore has standing separate from the Trustee. See In re Vitreous Steel Prods. Co., 911 F.2d 1223, 1231 (7th Cir.1990). The Court in Vitreous Steel also noted that, "[i]n addition, the Court can envision circumstances in which a trustee has little interest in an equitable subordination dispute between two secured creditors. It would make little sense to preclude an injured party from pursuing unique relief in the hope that a disinterested party would zealously pursue it for them." Id. As such, this requirement of a particularized injury is consistent with and an extension of the Supreme Court's rulings regarding the "prudential principles" of standing in Federal Court in any context, not just in Bankruptcy Court. See Newdow, 542 U.S. at 14, 124 S.Ct. at 2310, 159 L.Ed.2d at 111; Sprint, 554 U.S. at 289, 128 S.Ct. at 2544, 171 L.Ed.2d at 440.

Black Palm relies almost entirely on Vitreous Steel in its arguments. It correctly quites that opinion in saying

> [w]hile the Trustee may find that it is in the best interests of the estate to seek equitable subordination, individual creditors have an interest in subordination separate and apart from the interests of the estate as a whole. The individual creditor should have an opportunity to pursue its separate claims.

911 F.2d at 1231. In the same paragraph from which Black Palm quotes,

10

however, the Vitreous Steel Court states that a creditor may pursue an equitable subordination claim directly against another creditor because "it is not acting in the interests of all the unsecured creditors." Id. In other words, such a creditor's separate interest arises from the nature of his claim being different from that of the other unsecured creditors. Thus, a general unsecured creditor can bring such an equitable subordination action if it can show that it has a particularized injury that puts it in a position different from the other general unsecured creditors.

In this case Black Palm points to no evidence in the lengthy record showing that it has suffered a unique injury. Moreover, it does not even claim to have suffered any such particularized injury. The only injury it forecasts is that the distribution, left undisturbed, will net Black Palm "just a fraction" (34%) of a payout rather than complete payout. [Doc. 6 at 19, AP Doc. 13-3]. This fate, however, is identical to that to be suffered by **all** Valentine's general creditors. While not acknowledging the requirement of particularized injury specifically, Black Palm essentially concedes in its briefs to this Court and to the Bankruptcy Court in the adversary proceeding (in identical language) that there is no particularized inquiry. It states that it is similarly situated with all other creditors, vis a vis Barlage's alleged actions and relative claim position:

> [Barlege] must now respond, in equity, to the
> scrutinization of his conduct in obtaining his judgment

11

and its impact on diluting distributions to *other creditors* of the Debtor.

[Doc. 6 at 12, AP Doc. 13 at 2] (emphasis added).

In his brief to this Court, he goes on to add:

> The facts averred in Black Palm's complaint that Barlage fraudulently inflated his claim by more than $724,000.00 principal (plus fraudulent interest on the fraudulently inflated claim), if proven at trial, evidence sufficient inequitable conduct by Barlage, with *resulting damages to unsecured creditors*, to justify the equitable subordination of the claim of Barlage.

[Doc. 6 at 12] (emphasis added).

Black Palm also relies on <u>Bezanson v. Bayside Enterprises, Inc. (In re Medomak Canning)</u>, 922 F.2d 895 (1st Cir. 1990), to support its position that it has standing. This case, however, lends no aid to Black Palm's argument at all. The First Circuit in <u>Medomak</u> stated:

> As unsecured creditors, appellants could not in these circumstances evade the responsibility of looking to the Trustee *in the first instance* as their fiduciary and representative to vindicate their interests, including even their interest in pursuing equitable subordination beyond the hope of receiving a pro rata distribution of the estate along with the other general unsecured creditors. The Trustee is ordinarily the appropriate party to seek equitable subordination on behalf of the estate and unsecured creditors. **Generally, an unsecured creditor may assert equitable subordination only where the Trustee has refused to do so and the court grants an unsecured creditor leave to contest a claim.**

<u>Id.</u> at 902 (italics in original, bold emphasis added). The Court went on to hold

12

that an unsecured creditor could pursue a claim of equitable subordination to the extent it had a "special interest," Id., i.e. a "particularized injury."

Having failed to show any particularized injury and not having sought any leave of court to pursue the claim separately, the Appellant lacks standing to assert equitable subordination in the adversary proceeding or to prosecute this appeal. Since the Trustee has neither brought nor joined in this proceeding, this appeal must be dismissed.[4]

## ORDER

For the foregoing reasons, **IT IS, THEREFORE, ORDERED** that this appeal is **DISMISSED**.

Signed: October 13, 2011

Martin Reidinger
United States District Judge

---

[4] Since this appeal will be dismissed for lack of standing, the Court need not address anew the claims giving rise to the equitable subordination claims and the evidentiary basis for the bankruptcy Court's determination that Black Palm is collaterally estopped from asserting the equitable subordination claim, even though those issues appear to be identical to those litigated in the state court proceeding in Arizona.